# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | JOHN A. NORDBERG | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8174 | **DATE** | August 2, 2000 |
| **CASE TITLE** | Brian K. Pritchett, #N-94423 vs. James Page, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the accompanying Memorandum Opinion and Order, the defendants' motion to dismiss [#32] is granted in part and denied in part. The plaintiff may proceed only against the defendants Page, Springborn, Griffin, Pfister, and Quillin, and only on his claims that the food at Stateville is unhealthy and the plaintiff's cell is pest-infested. The complaint is dismissed as to all other claims and defendants pursuant to (depending on the claim, as discussed in the attached order) Fed. R. Civ. P. 12(b)(6), 42 U.S.C. 1997e(a), or 1997e(g). Thomas, Luce, Walker, Smith, and Schonauer are terminated as defendants. [The clerk is also directed to terminate the duplicate Griffin, who is incorrectly listed twice on the docket.] The plaintiff's motion to reconsider appointment of counsel [#26] is denied. This case is set for status conference on Thursday, September 14, 2000, at 2:30.

(11) ■ [See accompanying Memorandum Opinion and Order. ]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | AUG 9 2000 date docketed | |
| ✓ | Docketing to mail notices. | | 36 |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 AUG -8 PM 2:41 date mailed notice | |
| mjm | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

AUG 9 - 2000

BRIAN K. PRITCHETT, #N-94423,  )
                               )
           Plaintiff,          )                    AUG   9 2000
                               )
     v.                        )    NO. 99 C 8174
                               )
JAMES PAGE, et al.             )    HONORABLE JOHN A. NORDBERG
                               )
           Defendants.         )

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the conditions of confinement at the Stateville Correctional Center are so deplorable as to violate his Eighth Amendment rights, and that the preferential treatment of general population inmates violates his right to equal protection. This matter is before the court for consideration of the defendants' motion to dismiss the amended complaint for failure to exhaust administrative remedies or, in the alternative, for failure to state a claim. For the reasons stated in this order, the motion will be granted in part and denied in part.

## FACTS

The plaintiff is a state prisoner, confined at the Stateville Correctional Center at all times relevant to this action. The defendant James Page is Stateville's warden. The defendant Jerome Springborn is the assistant warden of programs. The defendant Nadine

36

Quillin is the prison's dietary food manager. The defendants Randy Pfister and Robert Griffin are, respectively, the current and former superintendents of the segregation unit (also known, apparently, as "I-House"). The defendant Donna Walker is the supervisor of the trust fund office. The defendant Georgia Schonauer is a prison grievance officer. The defendant Daniel Luce is a prison counselor. The defendant John Thomas is a correctional superintendent.[1]

The plaintiff alleges the following facts, which will be accepted as true for purposes of this motion: The plaintiff has been confined to Stateville's segregation unit since August 8, 1999. The plaintiff receives no beverage at lunch. The officers who pass out food trays are sweaty and do not wear gloves or hairnets; they intentionally allow the food to get cold before they serve it. The plaintiff receives utensils only at breakfast. He sometimes finds "foreign matters" in the food, and the portions are too small to meet the minimum daily allowance. No licensed dietary supervisor is present when food trays are being prepared. The plaintiff has to heat his food and check it for bugs and other foreign objects. He often becomes physically ill after meals. The general population receives completely different meals than those prisoners confined to segregation. Because the medical staff makes rounds

---

[1]The plaintiff's amended complaint dropped any claims against Assistant Warden D. Gatez.

The court's docket reflects that the defendant Smith, Stateville's medical director, may have signed a waiver of service on April 3, 2000 [there is some confusion as to Smith's first name or first initial]. Defense counsel has not entered an appearance on behalf of Smith, and Smith is not listed as a movant in the motion to dismiss. However, because the plaintiff has articulated no viable claim against Smith, *see infra*, Smith will be dismissed as a defendant without being required to answer or otherwise respond to the amended complaint.

of the unit only once or twice a week,[2] the plaintiff's nausea and food-related health problems generally go untreated.

The plaintiff receives one roll of toilet tissue, two small bars of soap, and a book of matches once a week. He receives toothpaste only once a month and is not provided with deodorant, shampoo, a Brillo pad, shaving cream or a comb. Although prison regulations require that inmates unable to afford toiletries be provided with an "indigent bag" every month, the plaintiff's grievances and requests for a monthly indigent bag have been ignored.

The plaintiff is allowed to use the recreation yard only once a week for five hours, and the recreation area is overly crowded. The plaintiff's leg and back muscles have "deteriorated" due to the lack of proper exercise. The [unnamed] medical staff has not honored the plaintiff's requests for muscle relaxers.

The plaintiff has to wash his clothing in the toilet because he has no personalized laundry bag in which to send out his clothing. The plaintiff has lost articles of clothing on a number of occasions because he has nothing to mark his property as belonging to him.

The plaintiff receives a clean jumpsuit about once a month despite the fact that prison regulations require that inmates be furnished with a fresh jumpsuit every week. He gets scabies "on a regular basis." The medical staff has refused to provide ointment or other treatment for the scabies.

---

[2]This allegation contradicts a statement in one of the plaintiff's grievances indicating that medical technicians make morning rounds on a daily basis. *See* Exhibit 14(l) to plaintiff's brief opposing dismissal.

Similarly, the plaintiff gets clean sheets only about once every three weeks, and often only because he refuses to remove his arm from his chuckhole or embarks on a hunger strike to protest the lack of clean linen.

The plaintiff is given only a mop to clean his cell, and only about once a month. He must use plain water and his hand soap because he is not provided with cleaning detergents or other supplies.

The plaintiff shaves about once a month because he will not accept a razor he believes may have been used. He sees the correctional staff throw razors into a bag rather than a disposable box when they collect the used blades.

On November 15, 1999, the plaintiff refused to take a yearly tuberculosis inoculation because the nurse was going to administer the shot from the outside of his cell door. The nurse refused the plaintiff's request to receive his shot in the health care unit.

The plaintiff often has to wait months to see a physician or dentist. His health has deteriorated since being placed in segregation. The plaintiff refuses treatment in the unsanitary office located in I-House.

The plaintiff's cell has never been sprayed for "hazardous bugs" since his placement there. The plaintiff has been bitten by roaches and spiders on numerous occasions.

When the plaintiff files grievances, they often go unanswered for months, if he receives any response at all. The plaintiff's emergency grievances to the warden likewise go unanswered. The Administrative Review Board will not accept appeals unless there is a written decision on the grievance at the institutional level.

4

The trust fund office has, on numerous occasions, failed to certify *in forma pauperis* petitions as requested, thus jeopardizing the plaintiff's ability to have civil cases heard.

The water at the Stateville Correctional Center is unfit to drink but the plaintiff must drink the "hazardous" tap water because he has no money to buy bottled water. The plaintiff frequently gets headaches from the water.

The plaintiff has not received a property box, as required by prison regulations. The plaintiff has to store his clothing under his mattress so that insects cannot "contaminate" it.

## DISCUSSION

The defendants' motion to dismiss will be granted in part and denied in part. The complaint must be dismissed as to those claims regarding which the plaintiff failed to file grievances prior to filing suit; certain other claims must be dismissed for failure to state a claim. The plaintiff may proceed only on his claims regarding the allegedly unhealthy food at Stateville and purported pest infestation of the segregation unit. The court finds that the plaintiff's professed attempts to exhaust the grievance process as to those claims satisfies the exhaustion requirement; moreover, accepting the plaintiff's factual allegations as true, those claims state a colorable cause of action against certain of the defendants under 42 U.S.C. § 1983.

Exhaustion

The defendants argue that the complaint must be dismissed for failure of the plaintiff to exhaust administrative remedies. As the defendants point out, inmates are generally required to exhaust administrative remedies prior to filing suit. *See* 42 U.S.C. § 1997e(a);

5

*Perez v. Wisconsin Department of Corrections,* 182 F.3d 532, 535 (7th Cir. 1999). In the instant case, the plaintiff has attached copies of grievances relating to every issue raised in his complaint except the fact that the general population receives different meals than those inmates confined to segregation. One of his very claims is that he receives no response to his grievances and therefore is unable to appeal to the Administrative Review Board. Accordingly, the court will consider the substantive merit of those claims regarding which the plaintiff allegedly filed grievances prior to bringing suit, even though there is no indication that he pursued appeals to the Administrative Review Board.

But the court cannot entertain those claims regarding which the plaintiff availed himself of the grievance process only after he filed suit. Letters to prison officials do not satisfy the exhaustion requirement. *Clark v. Beebe*, 198 F.3d 244, TABLE, text in Westlaw at 1999 WL 993979, **2 (6th Cir. 1999); *see also Hattie v. Hallock*, 8 F. Supp.2d 685, 689 (N.D. Ohio 1998) (prisoner must file the proper paperwork to meet the exhaustion requirement), *judgment amended on other grounds*, 16 F. Supp.2d 834 (N.D. Ohio, 1998). The plaintiff's grievances concerning unsanitary razors, property boxes,[3] monthly indigent bags, processing of i.f.p. applications, and fresh jumpsuits all bear 2000 dates. Because this lawsuit was initiated on December 16, 1999,[4] those claims must be dismissed. "[A] suit filed

---

[3]At least with respect to his grievance concerning the issuance of property boxes, the plaintiff received a response. Aside from timeliness, there is no indication that the plaintiff pursued the matter to the Administrative Review Board.

[4]Inexplicably, the complaint itself is dated December 9, 1999, before the date of one of the attached grievances. If the statute of limitations were an issue, the court would grant the plaintiff the benefit of the doubt and consider the complaint filed on the date it was dated, signed,

by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intraprison remedies before judgment." *Perez,* 182 F.3d at 535. Because the plaintiff complains of ongoing problems that could conceivably be corrected or at least ameliorated through the grievance process, those claims must be dismissed. *Accord, see Perez,* 182 F.3d at 536-37; *see also Massey v. Helman,* 196 F.3d 727, 733 (7th Cir. 1999): "if a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim" under Section 1983.

For the same reasons, the plaintiff's grievances about the scarcity of clean sheets, the inadequacy of weekly showers, and toxins in Stateville's water must be dismissed. Those grievances are dated, respectively, November 24, 1999, December 7, 1999, and December 12, 1999. The plaintiff cannot reasonably file suit two to twenty days after filing grievances and claim that the grievances were ignored. The prison administration must at least be given the opportunity, no matter how unlikely, to resolve the plaintiff's concerns. Consequently, the plaintiff's claims concerning new sheets, unsanitary razors, property boxes, monthly indigent bags, obstructed processing of i.f.p. applications, clean jumpsuits, tainted water,

---

and presumably given to prison officials for mailing. *Accord, Jones v. Bertrand,* 171 F.3d 499, 500-01(7th Cir. 1999). Here, because it behooves the plaintiff for the court to base its review on the date the complaint was received by the clerk of the court, the court is deeming that later date to be the date of filing.

more showers, and his equal protection claim regarding the food at Stateville are all dismissed pursuant to 42 U.S.C. § 1997e(a).

The court cannot reach the substantive merit of those issues in light of the plaintiff's failure to exhaust administrative remedies. *Perez*, 182 F.3d at 535. However, the plaintiff would be well advised to research his claims carefully before re-filing suit following exhaustion. For example, with respect to any Eighth Amendment claims, the plaintiff must satisfy the physical injury requirement of 42 U.S.C. § 1997e(e). Furthermore, the court notes that the Constitution requires showers no more often than once a week. *See, e.g., Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988), *cert. denied*, 488 U.S. 908 (1988). In addition, a claim concerning infringement on the plaintiff's access to the courts cannot stand in the absence of some showing of prejudice. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The fact that the plaintiff was able to file a properly certified petition to proceed *in forma pauperis* and litigate this case casts doubt on his claim that prison officials have hindered his access to the courts. *Accord, Walters v. Edgar*, 163 F.3d 430 (7th Cir. 1998).

The plaintiff is also forewarned that Rule 11 provides for the imposition of sanctions for making misrepresentations to the court. Certain of the plaintiff's allegations—such as that he developed a rash from washing in the sink rather than showering—strain credibility. For that matter, the court must also admonish defense counsel to verify any case citations submitted to the court. Not just one or two, but several of the cases relied on by the defendants do not stand for the propositions for which they are cited. Even if Mr. Doran is

8

using a brief bank compiled by the Attorney General's Office from previous cases, he is responsible for making sure his own briefs correctly state the law.

Turning to the substantive merit of those claims regarding which the plaintiff attempted to exhaust administrative remedies, it is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *reh'g denied*, 405 U.S. 948 (1972). *See also Tarkowski v. Robert Bartlett Realty Company*, 644 F.2d 1204 (7th Cir. 1980). They can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521; *Gregory v. Nunn*, 895 F.2d 413, 414 (7th Cir. 1990).

When considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts--as well as any inferences reasonably drawn therefrom--in the light most favorable to the plaintiff. *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. *Tarkowski*, 644 F.2d at 1207, *quoting Littleton v. Berbling*, 468 F.2d 389 (7th Cir. 1972). Nevertheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992), *cert. denied*, 506 U.S. 893 (1992).

Food

The plaintiff has articulated a colorable claim regarding the food and food preparation

in Stateville's segregation unit. The plaintiff complains of unsanitary food handling

practices; he also contends that he often finds "foreign matters" in his food and that the

portions are too small to meet minimum daily allowances.

There is no question that inmates have a constitutional right to an adequate diet. *See,*

*e.g., Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990).

> The state must provide an inmate with a "healthy, habitable environment."
> This includes providing nutritionally adequate food that is prepared and served
> under conditions which do not present an immediate danger to the health and
> well being of the inmates who consume it.

*French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986)

(citations omitted). The discovery of an occasional "foreign object" may be insufficient to

establish an Eighth Amendment violation, *see Hamm v. DeKalb County*, 774 F.2d 1567,

1575 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *Hoitt v. Vitek*, 497 F.2d 596, 601

(1st Cir. 1974). However, the constant presence of contaminants rises to the level of

constitutional concern.

Furthermore, the plaintiff's declaration that he frequently becomes physically ill after

meals satisfies the physical injury requirement of 42 U.S.C. § 1997e(e). In *Helling v.*

*McKinney*, 509 U.S. 25, 33 (1993), a case concerning an inmate's exposure to environmental

tobacco smoke, the Supreme Court observed:

> This was one of the prison conditions for which the Eighth Amendment
> required a remedy, even though it was not alleged that the likely harm would

occur immediately and even though the possible infection might not affect all of those exposed. We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery. Nor can we hold that prison officials may be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms.

509 U.S. at 33.[5] The plaintiff does not have to wait to become seriously ill to challenge the safety and nutritional adequacy of his diet in Stateville's segregation unit.

The court rejects the defendants' argument that they lack personal involvement. To be held liable under the Civil Rights Act, a defendant generally must have direct, personal involvement in the events giving rise to the lawsuit. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). However, the plaintiff points out that he and other inmates have filed grievances and written letters to prison officials apprising them of his concerns about the food.

*Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996), teaches that dismissal of a *pro se* complaint on grounds of lack of active personal involvement is inappropriate where the official's position justifies an inference that the official had some direct involvement in the alleged violation. *Antonelli* concerned broad claims of unconstitutional conditions of confinement at a county jail. In that case, the court found that an inference of involvement

---

[5]*Helling* is still good law despite the passage of the Prison Litigation Reform Act. In an unpublished 1998 decision, the Seventh Circuit Court of Appeals noted, citing *Helling*, that, "Eighth Amendment protection also extends to conditions that threaten to cause health problems in the future, as well as current serious health problems." *Williams v. Scott*, 142 F.3d 441, TABLE, 1998 WL 152969, **2 (7th Cir. 1998). Unlike the plaintiff in *Williams*, the plaintiff in the case at bar claims potential physical injury and not just emotional distress.

was justified to sustain claims asserted against certain senior officials, such as the county sheriff and the prison warden, where the claims alleged "potentially systemic," rather than "clearly localized," constitutional violations. *Id.* at 1428-29. In the case at bar, the plaintiff's claim clearly focuses on a non-localized, systemic violation--he takes issue with the safety of the food in Stateville's segregation unit. The warden, the assistant warden, the prison's dietician, and the segregation unit supervisors may arguably be responsible for exposing inmates to an unsafe, nutritionally deficient diet. The defendants must respond to the plaintiff's allegations.

Articles of Hygiene

The plaintiff claims that he receives toilet tissue and soap once a week, toothpaste only once a month, and never deodorant, shampoo, shaving cream or a comb. In pre-P.L.R.A. cases, the Seventh Circuit suggested that the denial of articles of hygiene may rise to the level of an Eighth Amendment violation where the deprivations are extended and where the plaintiff suffers some harm. *See, e.g., Del Raine v. Williford*, 32 F.3d 1024, 1033-34 (7th Cir. 1994), *but see Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (confinement in a "filthy, roach-infested" cell without articles of hygiene for five to ten days did not violate the Eighth Amendment); *see also Bono v. Saxbe*, 620 F.2d 609, 613 (7th Cir. 1980) (generally harsher conditions in segregation unit do not violate the Eighth Amendment).

But as noted *supra*, the Prison Litigation Reform Act requires an inmate to show some physical injury. *See* 42 U.S.C. § 1997e(e); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir.

12

1997). While the court is troubled by the plaintiff's allegation that he is being denied basic toiletries, the articles of hygiene of which he is sometimes deprived are not essential to the plaintiff's health or well-being. The plaintiff's claim that he does not always receive articles of hygiene to which he believes he is entitled must be dismissed pursuant to 42 U.S.C. § 1997e(e).

It should be noted that any violation of prison regulations regarding the monthly issuance of indigent bags is not actionable under 42 U.S.C. § 1983. Violations of state law are not, in and of themselves, actionable as constitutional torts. *See, for example, Rowe v. DeBruyn*, 17 F.3d 1047, 1051 (7th Cir. 1994), *cert. denied*, 513 U.S. 1994 (1994).

Outdoor Recreation

The plaintiff alleges that he is allowed to use the recreation yard only once a week, for five hours, and that his muscles have atrophied as a result. But even accepting the plaintiff's dubious allegation as true, the Court of Appeals for this circuit has held that five hours a week of out-of-cell exercise for inmates in segregation passes constitutional muster. *See, e.g., Davenport v. DeRobertis*, 844 F.2d 1310, 1315-16 (7th Cir.), *cert. denied*, 488 U.S. 908 (1988). "Unless extreme and prolonged, lack of exercise is not equivalent to a medically threatening situation." *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (confinement in segregation unit for four weeks). There is a significant difference between a lack of outdoor recreation and an inability to exercise. An inmate confined to the segregation unit retains the ability to improvise an exercise regimen in his cell or unit. If the plaintiff does not like the restrictions and heightened security imposed on inmates in the segregation unit, he

13

would be well advised to refrain from engaging in the type of behavior that results in disciplinary sanctions. The plaintiff's claim regarding insufficient outdoor recreation is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Laundry

The plaintiff claims that he is reduced to washing his clothing in the toilet because he has no personal laundry bag in which to send out his clothing; due to past experiences, he does not trust the laundry staff to keep track of his personal items. The court does not understand why the plaintiff uses the toilet bowl rather than the sink; in any event, the court finds as a matter of law that the plaintiff's complaint about the adequacy of laundry services at Stateville is not actionable under 42 U.S.C. § 1983.

The Eighth Amendment imposes on prison officials the duty to "provide humane conditions of confinement. . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*quoting Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). However, prison conditions violate the Eighth Amendment only when they exceed "contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994), *citing Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). The unsatisfactory laundry services at Stateville do not exceed "contemporary bounds of decency." While prisons must provide a "minimal level of cleanliness and sanitation for the health and safety of the prisoners," *Lunsford*, 17 F.3d at 1580, nothing in the complaint establishes that Stateville's laundry system falls so far below minimum standards that the Eighth Amendment is violated. The matter does not rise to the level of cruel and unusual punishment. *Accord, Barrett v. DeTella*, 95 C 7269, 1997

14

WL 94721, *3 (N.D. Ill. Mar. 3, 1997) (Andersen, J.). *Contrast Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) ("inmates cannot expect the amenities, conveniences and services of a good hotel"), with *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (objective component met where prison conditions were "strikingly reminiscent of the Black Hole of Calcutta"). The plaintiff's laundry claim is consequently dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Of course, if the plaintiff's personal property has been lost or stolen, nothing prevents him from filing a grievance and/or filing suit in the Illinois Court of Claims to recover for his losses. *See* 705 ILCS 501/1 et seq.; *Zinermon v. Burch*, 494 U.S. 113, 129 (1990). Lost property claims, however, do not belong in federal court. *Lucien v. Johnson*, 61 F.3d 573, 575 (7th Cir. 1995).

Cleaning Supplies

The plaintiff alleges that he is given a mop and pail only once a month and that he must use his own soap because he is not provided with "sanitation solutions." In some instances, the courts have awarded damages where an inmate's conditions of confinement fell below "the threshold of decency ensured by the Eighth Amendment." *See, e.g., Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (prison officials placed inmate in cell without running water and in which cell was smeared with feces while ignoring his requests for cleaning supplies). But here, there is no allegation that the plaintiff was forced to live in filth and squalor; the plaintiff has merely been unable to clean his cell to his satisfaction. The Eighth Amendment is not violated when the hygienic conditions in a prison simply do not

meet the prisoner's personal standards of cleanliness. *See Jordan v. Peters*, 2000 WL 14925, **4, 95 C 4163 (N.D. Ill. Feb. 8, 2000) (Pallmeyer, J.), *citing Barrett v. DeTella, supra*, 1997 WL 94721, at **3.

Tuberculosis Inoculation

The plaintiff claims that he refused a tuberculosis inoculation because the nurse wanted to administer the shot from outside of his cell door rather than in the health care unit. The dispute does not implicate the Eighth Amendment.

First, there is no indication that the plaintiff had a "serious" need for a t.b. inoculation. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (defining what constitutes a "serious" medical need). The fact that the plaintiff voluntarily declined treatment belies any inference that his need was serious. *See Thomas v. Gish*, 64 F.3d 323, 326 (7th Cir. 1995): "That would be an exotic theory of liability--a cousin to a prisoner's refusing medical treatment and then complaining that the prison had exhibited deliberate indifference to his medical needs by failing to treat him--and one perhaps vulnerable to a defense of crying wolf."

In any event, the court discerns no difference whatsoever in receiving a shot in the segregation unit as opposed to the health care unit. An inoculation requires only a sterile needle and perhaps a swab of alcohol or cleanser on the arm at the point of injection. The plaintiff is not entitled to damages for the nurse's refusal to schedule an appointment in the health care unit. Furthermore, even assuming that the matter implicated a constitutional right, there is no indication that the named defendants, supervisory officials at Stateville,

were personally involved in the incident. As noted in previous paragraphs, liability under 42 U.S.C. § 1983 requires a defendant's direct, personal involvement. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The doctrine of *respondeat superior* (supervisory liability) does not apply to civil rights actions.

General Medical Care

The plaintiff additionally maintains that he often has to wait "months" to see a physician or dentist, that his health has deteriorated since being placed in segregation, and that the medical office in the segregation unit is unsanitary.

The only reference to any such problem among the plaintiff's myriad grievances is his assertion, in connection with his complaint about the t.b. inoculation, that: "Also I have been trying to see a doctor and the med-techs who make morning rounds say no." *See* Exhibit 14(l) to plaintiff's brief opposing dismissal. But again, in order for a prison inmate to prevail under 42 U.S.C. § 1983 on a claim of medical mistreatment, he must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Here, there is no indication that the plaintiff had any serious medical condition, no relevant dates, nor any suggestion that any of the named defendants were aware the plaintiff had a medical problem that was going untreated.[6]

---

[6]In the context of his dismissed claim regarding jumpsuits not being laundered frequently enough, the plaintiff asserts that he gets scabies (a contagious itch or mange caused by parasitic mites) "on a regular basis," and that the medical staff has refused to provide ointment to combat the condition. The plaintiff also declares as part of his claim for more outdoor recreation that he has not received muscle relaxers for his sore limbs. Even assuming *arguendo* that scabies and muscle soreness amount to "serious" medical needs, again there is no indication that any of the named defendants has been personally aware of the plaintiff's need for medical treatment and

Despite the liberal standards governing federal notice pleading, a complaint must provide the defendants both fair notice of the claim and the grounds upon which it rests. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). The complaint fails to support an inference that the defendants acted with deliberate indifference to any serious medical need.

Pests

The plaintiff will be permitted to proceed on his claim that his cell is pest-infested and has never been sprayed for bugs. In *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996), the Court of Appeals reversed the dismissal of an inmate's claim that "cockroaches were everywhere," "crawling on his body," "constantly awaken[ing]" him, and "causing the environment to be unsanitary." The court ruled that two sprayings in sixteen months did "not necessarily show that the defendants were less than deliberately indifferent" to the plaintiff's constitutional rights, particularly since the plaintiff endured prolonged infestation and suffered significant physical harm. *Id.* at 1431. Here, the plaintiff's claim that his cell has been infested for many months by "hazardous bugs" that regularly bite him states a cognizable claim for relief under Section 1983.

---

intentionally denied him access to such care. The same reasoning holds true for the plaintiff's assertion that his nausea following some meals goes untreated. The alleged deliberate indifference of medical technicians cannot be attributed to supervisory officials unaware of the plaintiff's problems.

## Grievances

Finally, the plaintiff has no constitutional cause of action relating to his dissatisfaction with prison grievance procedures. Illinois' statutory grievance procedures do not create a protected interest. *Van Dyke v. Washington*, 896 F. Supp. 183, 188 (C.D. Ill. 1995); *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Therefore, prison officials' alleged failure to rule favorably or even act on many of the plaintiff's numerous prison grievances--while no cause for commendation--is not actionable under Section 1983. The plaintiff's claim that his grievances are denied, that there are inordinate delays before he receives a response, or that his letters and grievances sometimes go unanswered altogether, are dismissed for failure to state a claim.

## Qualified Immunity

The defendants' asserted defense of qualified immunity is spurious. State officials performing discretionary acts enjoy qualified immunity when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known at the time the incident occurred. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As discussed *supra*, however, longstanding case law has "clearly established" that prison officials may not subject prisoners to conditions of confinement that violate the Constitution. Accepting the plaintiff's allegations as true, the defendants cannot invoke qualified immunity. It should be noted that the Court of Appeals recently observed that qualified immunity is an issue better addressed at summary judgment and that it is "almost always a bad ground of dismissal." *Jacobs v. City of Chicago*, ___ F.3d ___, 2000 WL 706003, **12

(7th Cir. June 1, 2000). If the more fully developed record shows that the plaintiff has been receiving inadequate, unhealthy food, or that he has been preyed upon by "hazardous bugs" infesting his cell, the plaintiff may be entitled to recover damages for his injuries.

In sum, for all of the foregoing reasons, the plaintiff may proceed against the defendants Page, Springborn, Pfister, Griffin, and Quillin on his claim that the food in the segregation unit is unfit for consumption and does not meet dietary needs; he may also pursue his claim (against the same defendants except Quillin) that his segregation cell is infested with insects. The complaint must be dismissed as to all other claims and defendants either because the plaintiff failed to exhaust administrative remedies prior to bringing suit or because the deprivations, neither separately nor in their totality, rise to the level of Eighth Amendment concern.

Plaintiff's Motion for Appointment of Counsel

Turning to the plaintiff's "petition for rehearing on motion for the appointment of counsel," the motion for reconsideration is denied. Indigent parties in civil rights actions who are unable to obtain an attorney may apply to the court for appointment of counsel under 28 U.S.C. § 1915(e)(1). *See McKeever v. Israel*, 689 F.2d 1315, 1318 (7th Cir. 1982). However, civil litigants have no constitutional or statutory right to be represented by counsel in federal court. *See Merritt v. Faulkner*, 697 F.2d 761, 763 (7th Cir. 1983); *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995). The decision to appoint counsel lies within the broad discretion of the court. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992).

In exercising its discretion, a district court is guided by several factors: (1) the merit of the indigent plaintiff's claims; (2) the plaintiff's ability to investigate crucial facts; (3) whether the nature of the evidence indicates that the truth will more likely be exposed if both sides are represented by counsel; (4) the capability of the indigent litigant to present the case; and (5) the complexity of the legal issues raised. *Swofford v. Maxwell*, 969 F.2d 547, 551 (7th Cir. 1992), *relying on Merritt v. Faulkner*, 697 F.2d 761, 764 (7th Cir. 1983); *see also Maclin v. Freake*, 650 F.2d 885, 887-89 (7th Cir. 1981) (*inter alia*). "[O]nly when the cases are colorable, the facts may be difficult to assemble, and the law is complex" will judges request an attorney to assist the litigant. *DiAngelo v. Illinois Dept. of Public Aid*, 891 F.2d 1260, 1262 (7th Cir. 1989). As an additional threshold consideration, a litigant seeking appointment of *pro bono* counsel must show that he has made a reasonable attempt to retain private counsel, or that he is effectively precluded from making such efforts. *Jackson*, 953 F.2d at 1072.

After considering the above factors, the court concludes that appointment of counsel is not warranted in this case. Although the plaintiff arguably has alleged sufficient facts to give rise to colorable claims, he has alleged no physical or mental disability that might preclude him from adequately investigating the facts giving rise to his complaint. *See Merritt*, 697 F.2d at 765. Neither the legal issues raised in the complaint nor the evidence that might support the plaintiff's claims are so complex or intricate that a trained attorney is necessary. The plaintiff, whose pleadings and motions have been well-written and replete with case citations, appears more than capable of presenting his case, notwithstanding his

segregation status and professed limited knowledge of the law. It should be noted that the court grants *pro se* litigants wide latitude in the handling of their lawsuits. Therefore, the plaintiff's motion for appointment of counsel will be denied.

IT IS THEREFORE ORDERED that the defendants' motion to dismiss (docket #32) is granted in part and denied in part. The plaintiff may proceed against the defendants Page, Springborn, Pfister, Griffin, and Quillin on his claim that the food in the segregation unit is unfit for consumption and does not meet dietary needs; he may also proceed against Page, Springborn, Pfister, and Griffin on his claim that his segregation unit cell is infested with insects. The plaintiff's claims concerning the laundering of sheets and jumpsuits, the provision of fresh razors, the denial of property boxes and monthly indigent bags, the lack of cooperation on the part of the trust fund office, inmates' exposure to contaminated water, the plaintiff's desire for more showers, and his equal protection claim regarding the food at Stateville are all dismissed pursuant to 42 U.S.C. § 1997e(a). The plaintiff's claims that he receives insufficient toiletries, that he is not allowed adequate outdoor recreation, that laundry services at the prison are inadequate, that he is not provided with cleaning supplies, that a nurse refused to give him a tuberculosis inoculation in the health care unit, that he sometimes has to wait to see doctors and dentists, and that grievances go unanswered or are unfairly denied, are dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Donna Walker, Georgia Schonauer, Daniel Luce, John Thomas, and W. or J. Smith are terminated as defendants.

IT IS FURTHER ORDERED that the plaintiff's renewed motion for appointment of counsel (docket #26) is denied.

IT IS FURTHER ORDERED that the remaining defendants answer the plaintiff's remaining claims or otherwise plead within twenty-one days of the date of this order.

IT IS FURTHER ORDERED that this case is set for status conference on Thursday, September 14, 2000, at 2:30.

ENTER:

JOHN A. NORDBERG
United States District Judge

DATED: _August 2, 2000_