# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | JOHN A. NORDBERG | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 8174 | DATE | August 9, 2002 |
| CASE TITLE | Brian K. Pritchett, #N-94423 vs. James Page, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the accompanying Memorandum Opinion and Order, the plaintiff's motion for summary judgment [#119] is denied in its entirety. The defendants' motion for summary judgment [#99] is granted in part and denied in part. The plaintiff may proceed only against the defendants Griffin, Pfister and Lockett-Quillin on his claim that the food at Stateville was unhealthy and against Griffin and Pfister on his claim that his cells were pest-infested. Summary judgment is granted in favor of the defendants Page and Springborn, who are terminated as defendants in this matter. At the close of the case, the clerk is directed to enter judgment in favor of the defendants Page and Springborn and against the plaintiff pursuant to Fed. R. Civ. P. 56.

(11) ■ [See accompanying Memorandum Opinion and Order. ]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | AUG 1 2 2002 date docketed | 131 |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| mjm | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |


BRIAN K. PRITCHETT, #N-94423, )
)
Plaintiff, )
)
v. ) NO. 99 C 8174     AUG 1 2 2002
)
JAMES PAGE, et al. ) HON. JOHN A. NORDBERG
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the conditions of confinement at the Stateville Correctional Center were so deplorable as to constitute "cruel and unusual punishment." More specifically, the plaintiff claims that the food in Stateville's segregation unit was unfit for consumption and did not meet dietary needs; he additionally charges that the segregation unit cells in which he was housed were infested with cockroaches and spiders.[1] This matter is before the court for consideration of the parties' cross-motions for summary judgment. Because material facts are in dispute, both motions must be denied, except with respect to the warden and assistant warden, who lacked personal involvement in the events underlying this lawsuit.

---

[1] All other claims, along with certain defendants, were dismissed either by amendment, or pursuant to Fed. R. Civ. P. 12(b)(6) or 42 U.S.C. § 1997e(a). *See* Memorandum Opinion and Order entered August 2, 2000, granting, in part, the defendants' motion to dismiss.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Prime Northgate Plaza Ltd. Partnership v. Lifecare Acquisitions Corp.*, 985 F. Supp. 815, 817 (N.D. Ill. 1997). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

Disputed facts are material if they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). In ruling on a motion for summary judgment, the court cannot weigh the affidavits or the credibility of the parties. *Castillo v. United States*, 34 F.3d 443, 445 (7th Cir. 1994). The inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (citations omitted).

## FACTS

The plaintiff is a state prisoner, confined at the Stateville Correctional Center at all times relevant to this action. (Amended Complaint, p. 11.) The plaintiff is currently incarcerated at the Pontiac Correctional Center. (Plaintiff's Address Change Notice,

2

docket #49.) The defendant James Page was Stateville's warden at the time of the events giving rise to this action. (*Id.*, p. 2, ¶ B.) The defendant Jerome Springborn was an assistant warden at Stateville. (Defendants' Exhibit 2, Springborn Affidavit, ¶¶ 1, 2.) The defendant Nadine Quillin-Lockett was the prison's dietary manager. (Defendants' Exhibit 4, Lockett Affidavit, ¶ 1.) The defendant Randy Pfister was the superintendent of the segregation unit at Stateville (also known, apparently, as "I-House") from November 1999 through February 13, 2000. (Defendants' Exhibit 3, Pfister Affidavit, ¶ 1.) The defendant Robert Griffin was the I-House superintendent prior to Pfister. (Amended Complaint, p. 4, ¶ I.)

The following facts are uncontested for purposes of this motion **(disputed facts are in bold print)**: The plaintiff was incarcerated in Stateville's segregation unit from August 9, 1999, until September 11, 2000. (Defendants' Exhibit 5, Offender Tracking System Cell Placement Record). The plaintiff was housed in various cells in the I-House throughout his confinement at Stateville. (*Id.*)

Pests

I-House was routinely sprayed for pests. (Pfister Affidavit, ¶ 2.) An exterminator was contracted to spray on a monthly basis. (*Id.*, ¶ 2.) Each month, the exterminator sprayed all common areas, wings, offices, and control centers. (*Id.*, ¶ 3; Affidavit of Joseph Funk, Critter Ridder pest control services, ¶ 2.) Alternating each month, the exterminator was supposed to spray each and every cell in the cell house. (*Id.*)

3

However, the plaintiff maintains that his cells were NEVER sprayed during the whole year and a month he was confined at Stateville. (Plaintiff's deposition, p. 29; Plaintiff's Affidavit, p. 39, ¶ 11; p. 45, ¶ 34.) The plaintiff knew that his cells had not been sprayed because he was never taken out of his cell for pest control. (Plaintiff's dep., p. 30; Plaintiff's Affidavit, p. 39, ¶ 11.) The plaintiff maintains that Stateville was on "lockdown" on certain purported dates of spraying during the time period in question. (*Id.*) He asserts that because there was no inmate movement on those dates, the prisoners could not have been removed from their cells for pest control. (*Id.*)

Furthermore, although Pfister maintains that he would have reported any inmate concerns about pests to the exterminator, *see* Pfister affidavit, ¶¶ 4 and 5, the plaintiff contends that his reports to Pfister and Griffin were ignored. (Plaintiff's dep. p.33.) "On any given night," the plaintiff would wake up with at least three or four cockroaches in bed with him, and he suffered numerous bug bites. (*Id.*, p. 28; Plaintiff's Affidavit, pp. 37-38, ¶¶ 1-9; *see also* Plaintiff's Exhibits R and S, affidavits from fellow inmates regarding the cockroach problem.) The plaintiff additionally complains of spider infestation. (Plaintiff's dep. p. 34; Plaintiff's Affidavit, p. 37, ¶1.) Although the exterminator asserts that each, individual cell is treated at least once a month (Funk Affidavit, ¶ 2), the defendants have no records specifically

4

showing that the plaintiff's individual cells were, in fact, sprayed. (Plaintiff's Exhibit Q, Response to Discovery Request.)[2]

Food

As a correctional food service supervisor at Stateville, the defendant Lockett is familiar with storage concerns, food usage, delivery of meals, temperature controls, and other dietary matters. (Lockett Affidavit, ¶¶ 1, 2.) Lockett monitors food preparation and food condition. (*Id.*, ¶ 3.)

According to Locket, meals at Stateville are "maintained, prepared and distributed under specific food guidelines. The food is dietetically appropriate and sufficiently nutritious." (*Id.*, ¶ 4.) Lockett concedes that because food is delivered individually to the segregation unit, there are some "inherent problems" such as temperature control of the food. However, Lockett insists that segregation food "is maintained, prepared and distributed under the same specific food guidelines as the [rest of the] entire institution." (*Id.*, ¶ 5.)

---

[2]The defendants, citing *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991), argue that the court cannot accept the plaintiff's "conclusory, unsubstantiated, self-serving affidavit." But this case is easily distinguished from *Hall*. In *Hall*, the plaintiff alleged several violations of his First Amendment right to exercise his religious beliefs. At the summary judgment stage, the court rejected the plaintiff's conclusory allegations of malicious intent on the part of the defendants. Here, however, the affidavits of the plaintiff and his witnesses contain factual assertions based on personal knowledge rather than subjective beliefs; their testimony would be admissible as evidence. *See* Fed. R. Civ. P. 56(e). While the weight and credibility of the inmates' statements, particularly those without any supporting evidence, are subject to valuation by the trier of fact, the affidavits create triable issues of fact. Nevertheless, the plaintiff's self-serving diary of "cruel and unusual conditions," which he prepared after filing suit, is inadmissible as evidence that the cells were **not** sprayed.

5

The plaintiff denies that the food at Stateville was fit for consumption, or even that Lockett was present in I-House to oversee food preparation. [The court gathers from the plaintiff's deposition, *see* pp. 14-16, that the food is prepared in the dietary unit, brought to the segregation unit in large pans, and then re-heated and distributed in Styrofoam trays.] The plaintiff claims that he rarely ate the food because it was so unpalatable, but that when he did, he became ill after "most" meals, suffering from vomiting and diarrhea within minutes after eating. (Plaintiff's dep., pp. 23-24; Plaintiff's Affidavit, p. 50, ¶ 49.) "On many occasions," the plaintiff received food that was spoiled and "clearly days old." (Plaintiff's Affidavit, p. 52, ¶ 59.) The plaintiff lost twelve pounds during his year at Stateville. (*Id.*) The plaintiff would often find "foreign matters" in the food, and he maintains that portions were too small to meet the minimum daily allowance. (Plaintiff's Affidavit, p. 50, ¶ 50.)

As Assistant Warden of Programs at Stateville, the defendant Springborn was responsible for the overall provision of programs and services to the inmates incarcerated at the institution. (Springborn Affidavit, ¶ 2.) Although Springborn directly supervised some of the inmate living units through a chain of command, he did not supervise the disciplinary segregation unit. (*Id.*) As Warden at Stateville, the defendant Page was responsible for the overall administration of the facility. (Page Affidavit, ¶ 2.) Page had no involvement in the day-to-day operations of individual housing units at Stateville. (*Id.*,

¶ 3.) The responsibility for daily operations in a given living unit was delegated to a unit manager, who, in turn, supervised daily operations through an established chain of command within the unit. (*Id.*) Because Page's office receives over a hundred pieces of inmate correspondence during an average week, the warden cannot and did not review or respond to routine inmate correspondences. (*Id.*, ¶ 6.) Inmate letters complaining of cellhouse conditions would routinely be forwarded to the cellhouse superintendent or to other appropriate staff members for handling. (*Id.*)

The plaintiff wrote one letter to the defendant Page about the food in Stateville's segregation unit. (Plaintiff's Exhibit H, letter dated Sep. 4, 1999.) The letter said:

> Mr. Page, I have been trying to get assistance from your staff members
> about the serving of the food here in I-House. I wrote numerous letters to
> the Food Manager, Cell House Lt., Supt. Griffin, I have been ignored. All I
> am asking for is to be served hot meals and to have them served to me with
> the standard protective ware. You are the last of the chain-of-command and
> I will try to get his problem solved through you instead of filing a
> grievance. Please check into this matter.

## **DISCUSSION**

The defendants' motion for summary judgment will be granted in part and denied in part. Because material facts are in dispute, a trier of fact must determine whether the defendants Pfister and Griffin acted with deliberate indifference to pest infestation and whether the defendants, Pfister, Griffin and Locket-Quillin failed to provide the plaintiff with a healthy diet while he was confined in Stateville's segregation unit. Summary judgment is granted, however, in favor of the defendants Springborn and Page. The

7

plaintiff's cross-motion for summary judgment must be denied in its entirety for the same reasons the court is denying the defendants' motion for summary judgment as to certain individuals.

Exhaustion

The defendants continue to argue that the plaintiff's two remaining claims must be dismissed for failure of the plaintiff to exhaust administrative remedies prior to filing suit. Although the court must generally dismiss a complaint where the inmate has not completed the administrative grievance process, *see* 42 U.S.C. § 1997e(a), the court has already ruled that the plaintiff has satisfied the exhaustion requirement. *See* Memorandum Opinion and Order entered August 2, 2000, pp. 5-7. The Coordinator of Inmate Issues for the Illinois Department of Corrections states that he has found no record of any grievances filed by the plaintiff concerning the conditions of his confinement at the Stateville Correctional Center. *See* Defendants' Exhibit 8, Affidavit of James Simmons. But in response to the defendants' motion to dismiss, the plaintiff has submitted copies of grievances he purportedly filed regarding both the bug problem and the food at Stateville. [*See* Exhibits 14(H) and 14(M) to Plaintiff's Brief Opposing Dismissal, docket #34.] Simmons' affidavit is additionally controverted by a note to the plaintiff from grievance officer Anna Hill dated February 28, 2000, which acknowledges two outstanding grievances regarding food quality. *See* Plaintiff's Exhibit W.³

---

³Those grievances were filed only after the plaintiff filed suit. It should be noted that "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed;

8

In fact, one of the (dismissed) claims raised in the amended complaint was that the plaintiff received no responses to his grievances and was therefore unable to appeal to the Administrative Review Board. *See also* Plaintiff's Affidavit, p. 41, ¶ 19; p. 51, ¶¶ 57, 58.) The court is aware of no prison regulation permitting an inmate to bypass institutional review and appeal to the Administrative Review Board if he receives no response. Since the plaintiff's grievances were allegedly lost or destroyed[4] at the institutional level without being addressed, he had no "available" administrative remedy and thus cannot be barred from pursuing relief in federal court. Accordingly, the court has deemed the exhaustion requirement satisfied and has permitted the plaintiff to proceed on those claims.

Pests

Turning to the substantive merit of the plaintiff's claims, summary judgment must be denied with respect to the plaintiff's claim that his cells were cockroach- and spider-infested and never sprayed for bugs. As discussed more fully in the court's earlier Memorandum Opinion and Order, prolonged pest infestation may be actionable under 42

---

the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intraprison remedies before judgment." *Perez v. Wisconsin Department of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). But the plaintiff's Exhibits 14(H) and 14(M) purport to be copies of earlier grievances he supposedly filed. A grievance regarding food quality is dated September 24, 1999; a grievance regarding bugs is dated October 5, 1999. The plaintiff initiated suit on December 16, 1999.

[4]The defendants correctly note that the plaintiff has offered no basis for asserting that counselor Daniel Luce intentionally destroyed his grievances. *See, Hall, supra*. Nevertheless, the court will accept as true that the plaintiff filed grievances but received no responses.

U.S.C. § 1983. *Accord, Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). Here, the plaintiff claims that his cell was infested for many months by "hazardous bugs" that bit him on a "constant and regular basis," *see* Plaintiff's Affidavit, p. 38, ¶ 8; he further asserts that, for some reason, his cells were never sprayed for bugs. Neither party has established entitlement to summary judgment on this claim. As noted *supra*, the court cannot assess credibility or resolve factual disputes on a motion for summary judgment. A jury will have to decide whether an exterminator routinely sprayed the plaintiff's cell (as the defendants maintain), or whether bugs were rampant and that there was no pest control whatsoever in any of the cells where the plaintiff was housed while confined in Stateville's I-House (as the plaintiff contends).

Food

The plaintiff has likewise articulated a colorable claim regarding the food and food preparation in Stateville's segregation unit. The plaintiff complains of unsanitary food handling practices; he also contends that he frequently found "foreign matters" in his food, that the food often made him become ill, that the portions were too small to meet minimum daily allowances, and that he lost twelve pounds during his year at Stateville.

There is no question that inmates have a constitutional right to an adequate diet. *See, e.g., Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990).

> The state must provide an inmate with a "healthy, habitable environment." This includes providing nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.

10

*French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986) (citations omitted). The discovery of an occasional "foreign object" may be insufficient to establish an Eighth Amendment violation, *see Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *Hoitt v. Vitek*, 497 F.2d 596, 601 (1st Cir. 1974). However, the constant presence of contaminants rises to the level of constitutional concern.

Many of the plaintiff's declarations do not strike the court as scientifically sound. At trial, the plaintiff will have to provide some authority to support his assertion that the food at Stateville did not meet dietary standards, that steam-cooking food somehow "takes the nutrition out of it" or that the food preparation at Stateville otherwise "take[s] all the proteins out of it." Likewise, the plaintiff's claim that refined sugar takes "out all the elements of nutrition" is highly dubious, as is the plaintiff's pronouncement that the "stench of feces and urine" from cells near the food preparation area would contaminate the food. The plaintiff's subjective beliefs, without some competent authority to validate those statements, are insufficient to show that the food served at Stateville was non-nutritious.

Furthermore, cold meal breakfasts instead of hot cereal do not implicate any constitutional rights. *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1984) ("complaints about cold and poorly prepared food must fail"). Similarly, the lack of salt, pepper, and salad dressing do not approach a level of constitutional concern. The Eighth

Amendment does not entitle inmates to food that is seasoned to their liking. "A well balanced meal, containing sufficient nutritional value to preserve health is all that is required." *Id., quoting Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977).

Moreover, the plaintiff cannot litigate his claim that the food is "unhealthy and contaminated due to the fact that the food that is prepared at Stateville is being prepared with contaminated water." The plaintiff repeatedly asserts throughout his brief opposing summary judgment that the food at Stateville was tainted by radium in the water. However, the court previously dismissed that claim for lack of exhaustion. *See* Memorandum Opinion and Order of August 2, 2000, at p. 7. More importantly, the Court of Appeals for this circuit subsequently decreed that an inmate's exposure to radium in the water at the Stateville Correctional Center does not amount to cruel and unusual punishment. *Carroll v. DeTella*, 255 F.3d 470 (7th Cir. 2001). The plaintiff cannot argue at trial that the food was unfit for consumption because it was prepared in "radium-polluted" water.

Nevertheless, because the plaintiff maintains that he frequently–in fact, after "most" meals–became physically ill and that he lost a significant amount of weight while incarcerated at Stateville, those allegations alone are sufficiently serious to raise a triable issue of fact as to the nutritional adequacy of the plaintiff's diet. A jury must decide whether the food in Stateville's segregation unit failed to meet dietary standards, or was prepared or served in a manner that jeopardized the plaintiff's health and well-being.

12

Personal Involvement

For the reasons discussed *supra*, the plaintiff will be permitted to proceed against his cellhouse superintendents on his two remaining claims (as well as against the dietary supervisor insofar as the plaintiff sues over the food). However, the defendants Page and Springborn are entitled to judgment as a matter of law because they lacked direct, personal involvement in the conditions of the plaintiff's confinement. The plaintiff confesses the motion as to Springborn, "conceding to the fact that Defendant Jerome Springborn was not personally involved in the present case. . . . Therefore, Plaintiff request[s] Defendant Springborn be dismissed from this complaint." (Plaintiff's opposing brief, p. 34.) Page, too, is entitled to judgment as a matter of law.

To be held liable under the Civil Rights Act, a defendant generally must have direct, personal involvement in the events giving rise to the lawsuit. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992).

The court previously denied a motion to dismiss the warden and assistant warden because the plaintiff complained of "potentially systemic," rather than "clearly localized," constitutional violations. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996). But the more fully developed record fails to justify an inference that Warden Page had any direct or remote involvement in the conditions in the segregation unit. As far as

13

supervisory officials were concerned, the segregation unit was being regularly sprayed for pests, and the food was being prepared under the supervision of a dietician. There is no indication that the plaintiff's grievances reporting problems with pest control or food ever reached the desk of the warden or assistant warden.

The plaintiff has submitted a copy of a single letter he allegedly wrote to Warden Page about the food. (Plaintiff's Exhibit H, letter dated September 4, 1999.) The letter said only, "All I am asking for is to be served hot meals and to have them served to me with the standard protective ware." The practice at Stateville was to route such letters to the appropriate department head. But even assuming that Page could be held accountable on the basis of one letter, that correspondence in no way put Page on notice that the meals served in the segregation unit were unhealthy. The letter makes no mention of unsanitary practices, spoiled food, inadequate portions, foreign matters in the food, or adverse physical reactions to the food. The plaintiff's desire for hot meals and nicer serving dishes and utensils in no way alerted Page that the segregation unit food was unfit for consumption or otherwise denied the plaintiff basic essentials. Furthermore, the plaintiff provides no evidence whatsoever that Page was aware of any bug problem in the I-House. On the record before the court, the defendant Page cannot be held liable either for exposing the plaintiff to an unsafe, nutritionally deficient diet, or for the "hazardous bug" problem. Accordingly, summary judgment will be granted in favor of both the defendants Page and Springborn.

In sum, for all of the foregoing reasons, both parties' motions for summary judgment are denied as to the defendants Pfister, Griffin, and Quillin-Lockett on the plaintiff's claim that the food in Stateville's segregation unit was harmful and/or nutritionally inadequate; summary judgment is also denied with respect to the plaintiff's claim that Pfister and Griffin acted with deliberate indifference to bug infestation. Summary judgment is granted only in favor of the defendants Page and Springborn.

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment (docket #99) is granted in part and denied in part. The motion is denied as to the plaintiff's claim that the defendants Pfister, Griffin, and Quillin-Lockett provided him with food that was unfit for consumption and did not meet basic dietary needs; the plaintiff may also proceed to trial against Pfister and Griffin on his claim that his segregation unit cell was infested with insects. However, the motion is granted as to the defendants Springborn and Page.

IT IS FURTHER ORDERED that the plaintiff's motion for summary judgment (docket #119) is denied in its entirety.

ENTER:

JOHN A. NORDBERG
United States District Judge

DATED: August 7, 2002

SEE CASE FILE FOR EXHIBITS